It is insisted by the defendant that Barmore's interest in the lot upon which the building was erected, was not such as to subject it or the building to the operation of the lien law. Barmore was the tenant of Wynant, without any particular agreement as to time, but paying an annual rent. This created a tenancy from year to year. While so occupying he constructed the building. It is provided by section 1, of chapter 384, Laws of 1852, among other things, that any person who shall hereafter, by virtue of any contract with the owner thereof, or of his agent, perform any labor or furnish materials in building, altering or repairing any house or other building in the county of Westchester (and others *Page 242 
named in the act) shall have a lien, for the value of such labor and materials, upon such house or building and upon the lot of land on which the same shall stand, to the extent of the right, title and interest at the time existing of such owner. The interest of a tenant from year to year in the lot upon which he erects a building, and his interest in the building, fall within the language of the act, and there is no reason to except such interests therefrom. This act should be liberally construed so as to attain the end designed by its enactment. That end was to secure to laborers and materialmen their pay for services rendered and materials furnished for the construction of buildings. The Legislature have not required any definite extent of interest as a requisite of the attaching of the lien. The plain import of the terms used imply that the lien shall attach upon any valuable interest in the building and lot.
The defendant insists that the covenant contained in the lease to Hall, relative to leaving buildings, fences, c., upon the lot, is adopted in the lease to Wynant; and that the latter, by its true construction, subjects the lessor to the same obligation, in that respect, as the former. The only reference made to the lease to Hall, in the one given to Wynant, occurs in the description of the premises and privileges as enjoyed by Hall. This reference only ascertains with greater certainty the premises covered by the lease and the extent of the privileges granted to the lessor. They do not purport to impose any burden upon the lessor, or in any way subject him to the covenants contained in the lease to Hall. No such intention can be inferred from the mode and language in which the reference is made.
The defendant claims that the building in question formed part of the real estate, and that Barmore had no right to remove it from the demised premises. As between vendor and vendee, mortgagor and mortgagee, there can be no doubt that the building would constitute a part of the realty and pass with it. Unless Barmore, as tenant, had the right of removal, the plaintiff acquired no title to the building, and the motion *Page 243 
for a nonsuit should have been granted. These premises were used as a public house. The building in question was erected for the accommodation of the business. It falls within the reason of the rule conferring upon tenants the right of removing buildings erected for the purpose of trade and manufacture. There can be no reason why a tenant engaged in keeping a boarding house, a tavern or livery stable upon demised premises and requiring additional accommodations, should not be at liberty to construct buildings and remove the same at the end of his term, that will not apply with equal force to buildings erected for the purpose of manufacture. The distinction between erections for trade and agriculture rests upon artificial reasoning not very satisfactory, but is perhaps too firmly established to be disregarded. The building in question is more nearly allied to the former than the latter class, and should be treated as an erection for the purpose of trade. Within the rules established in regard to these there can be little difficulty in sustaining the right of Barmore to remove it. In Holmes v. Tremper (20John., 29) it, was held that a tenant might remove a cider mill and press erected by her during the term. In giving the opinion of the court, SPENCER, Ch. J., says: "I confess I never could perceive the reason, justice or equity of the old cases which gave to the landlord such kind of erections as were merely for the use and convenience of the tenant, the removal of which neither defrauds nor does the least injury to the landlord." InVan Ness v. Pacard (2 Peters, 137), it was held that a tenant might remove a two story house, resting upon a stone foundation, having a cellar and chimney, erected for a residence and for carrying on the dairy business. It has been held in Massachusetts (4 Pick., 310), that a tenant may, at the expiration of his term, remove all such improvements as were placed there by him, the removal of which will not injure the premises or put them in a worse plight than they were when he took possession. The cases are numerous upon the subject of fixtures — many of them were reviewed by Mr. Justice HARRIS, inDubois v. Kelly 10 Barb., 496). The rule to be gathered from the cases I *Page 244 
think is that a tenant may remove, during his term, all erections made by him for the purpose of trade that can be removed without injury to the land or something permanently attached thereto. Where the foundation upon which a building rests is imbedded in the earth he cannot remove the foundation. When the building rests upon such foundation and is confined by its weight only, he may remove the building. Such a rule promotes the interest of the tenant. It enables him to obtain the greatest advantage from the use of the land. It works no injury to the landlord. He obtains his land at the end of the term in as good condition as though no erections had been made. There is no reason why he should appropriate to himself the fruit of the tenant's outlay without compensation. The building in question was not in any manner affixed to the freehold save by its weight. Barmore, therefore, had a right to remove it. It was subject to the plaintiff's lien. The defendant cannot object to any irregularity in the proceedings to enforce it. This is a right available to Barmore alone; the proceedings are conclusive upon third persons.
There is nothing in the objection that the kitchen was moved and fence removed for the purpose of clearing the ground on which to place this building. These acts Barmore had no right to do without the consent of the defendant. But although liable for the damages thus occasioned, the title to the building would not be thereby affected. The defendant could not avail himself of the mortgage given by Barmore to Wynant. This was not transferred to him by the release of the premises in August, 1853. That was simply a surrender of his rights under the lease. The rights of the plaintiff could not be affected by any of the transactions between Barmore, Wynant and the defendant after the execution was levied.
The judgment should be affirmed.
SELDEN and ALLEN, Js., dissented; all the other judges concurring,
Judgment affirmed. *Page 245